No. 21007.

GERALDINE ROSE DEINES *v.* ARLEIGH WAYNE DEINES.
(402 P.2d 602)

Decided June 7, 1965.

WILLIAMS & ZOOK, WILLIAM A. TRINE, JOEL H. GREENSTEIN, for plaintiff in error.

RAY A. GUNNING, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

ON July 15, 1963, after trial Geraldine Deines was granted a divorce from Arleigh Deines, her husband, on the statutory grounds of mental cruelty and bodily violence. At the same time the trial court also granted a divorce to Arleigh on the ground of Geraldine's mental cruelty towards him.

In the aforementioned decree in divorce the custody of the two minor children of the parties was awarded to Geraldine, subject to rights of visitation which were granted Arleigh. Arleigh was also ordered to pay Geraldine the sum of $100 per month as support for the two minor children. It should be noted that the decree contained no restriction relating to Geraldine's place of residence.

On August 23, 1963, Arleigh filed with the trial court a motion wherein he sought a modification of the cus-

tody and support order of July 15, 1963. Specifically, Arleigh requested that custody of his two minor children be taken from Geraldine and granted him, and further that he be relieved of the support payment called for by the prior order of the Court.

As grounds for thusly modifying the custody and support order, Arleigh — acting on "information and belief" — averred that Geraldine "has departed from the jurisdiction of this Court, surreptitiously, with her paramour" and that as a result thereof he has been deprived of his visitation rights.

When the aforementioned motion came on for hearing, Geraldine did not appear, though her counsel did. Counsel frankly informed the trial court that as of that particular moment he did not know the whereabouts of his client, but that he nevertheless appeared on Geraldine's behalf for the purpose of resisting Arleigh's motion for a modification of the support and custody order.

At the hearing the only person to testify was Arleigh. His testimony was quite brief: he testified that he had not seen his children for about three weeks, that he did not know the whereabouts of Geraldine or the children, and that if the trial court should grant him custody of the children his sister would "move over and give them motherly care." On cross-examination Arleigh conceded that he did not know whether Geraldine and the children had "left temporarily or permanently."

The trial court thereupon granted Arleigh's motion "in toto," and ordered that custody of the two children "be changed from Geraldine to Arleigh" and that Arleigh be relieved of all support payment.

At the hearing when the trial court granted Arleigh's motion for a change of the custody and support order, it gave no explanation of its order. However, when the trial court later denied Geraldine's motion to vacate the order, the trial court stated that its reason for granting Arleigh's motion was because "she's trying to avoid the process of this court, I'm satisfied of that, and I was

satisfied at the time, and that's the reason the order was changed."

By writ of error Geraldine now seeks reversal of the aforementioned order and judgment of the trial court insofar as such order changed the custody of the two minor children from herself to Arleigh. In this regard it is Geraldine's contention that the trial court's action constituted an abuse of discretion in that there was no evidence of such "changed circumstances" as would support the modification. Counsel for Geraldine concede that her conduct may be such as to subject her to contempt proceedings, but that notwithstanding this apparent misconduct by Geraldine, such dereliction, standing alone, is insufficient to establish that it was in the best interests of the children that they be taken from the mother and awarded to the father.

C.R.S. 1963, 46-1-5 provides that a trial court shall retain jurisdiction of a divorce action for the purpose of such later revision of its orders pertaining to custody and support "as changing circumstances may require" or for the purpose of hearing any matters which it was "unable to determine at the earlier hearings for lack of jurisdiction over one of the parties, or for lack of knowledge or information, or because of fraud, misrepresentation or concealment."

Arleigh makes no contention that at the earlier hearing the trial court "lacked jurisdiction over one of the parties" or that the trial court lacked "knowledge or information" or that it was in anywise imposed upon through "fraud, misrepresentation or concealment." Hence, the issue narrows to a determination as to whether Arleigh produced sufficient evidence to establish such changed circumstances as would justify the action taken by the trial court. It is our considered view that the evidence in this regard is legally insufficient and the judgment of the trial court must therefore be reversed.

■■ The general rule is that once a custody order

has been duly entered it should not thereafter be modified or changed unless conditions have themselves changed since the initial order was made or unless material facts previously unknown have later been disclosed. As a corollary of the foregoing, it is also well-established that evidence of events which occurred *prior* to the original custody order, unless such were unknown to the trial court at the time the original order was entered or unless the trial court was in some fashion imposed upon through fraud and concealment, may not be the basis for a modification of the earlier custody order. In other words, as the foregoing principles are applied to the instant case there must be proof of a *change of circumstances* in order to justify any modification of the order and decree awarding custody of the two children to Geraldine. See *Ross v. Ross,* 89 Colo. 536, 5 P.2d 246; *Averch v. Averch,* 104 Colo. 365, 90 P.2d 962 and *Peterson v. Schwartzmann,* 116 Colo. 235, 179 P.2d 662.

█ *Pearson v. Pearson,* 141 Colo. 336, 347 P.2d 779 presented a factual situation rather analogous to the one posed by the instant case. There the trial court modified an earlier custody order by taking custody of three minor children from the mother and granting the custody thereof to the father. In that case shortly after the initial order of the trial court which granted custody of the children to the mother, the mother and the children departed from their usual residence for places unknown, leaving behind a note which read that the mother was leaving and "not to try to find her." Similarly, in the *Pearson* case the trial court opined that the basis for its action was that in its view there had been a studied effort on the part of the mother to prevent the father from visiting his children. In reversing the order and judgment of the trial court changing custody of the three minor children from the mother to the father, this Court said:

"It is apparent from the record that plaintiff, after

the entry of an interlocutory decree of divorce in favor of defendant, in reprisal sought to prevent defendant from visiting the children by hiding them and secreting their whereabouts. Her actions cannot be justified and are certainly not to be condoned, and could subject her to punishment for contempt of court. However, this alone, unaccompanied by other evidence, does not constitute sufficient grounds for a change in custody of the children. The trial judge, however, overemphasized this very conduct by stating at the outset of the trial:

"The fact remains, gentlemen, that throughout this entire proceeding there has been a studied effort on the part of plaintiff here to prevent the defendant from seeing those children."

In our view disposition of the present controversy is governed by the rationale of *Pearson v. Pearson, supra.* Arleigh simply did not produce evidence of such changed circumstances as would justify the trial court in changing the custody of the two minor children from Geraldine to Arleigh. Arleigh produced nothing to show that such would really be in the best interests of his two children.

The judgment changing custody of the two minor children from Geraldine to Arleigh is therefore reversed.

MR. JUSTICE FRANTZ and MR. JUSTICE SCHAUER concur.