No. 79SA111

**Arthur Jerome Watson v. District Court in and for the Fourth Judicial District and the Honorable William Calvert, District Court Judge**

(604 P.2d 1165)

Decided January 7, 1980.

J. Gregory Walta, State Public Defender, Michael Wood, Deputy, for petitioner.

Robert L. Russel, District Attorney, Fourth Judicial District, Charles J. Yett, Deputy, for respondents.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

This is an original proceeding which is buttressed by only a skeleton record. The petitioner, Arthur Jerome Watson, seeks a writ of prohibition to prevent the respondent district court from forcing him to go to trial immediately after a scheduled hearing on his counsel's motion to withdraw. Petitioner also seeks a writ of mandamus requiring the trial court to allow his counsel to withdraw because of a conflict of interest. As a result of our rule to show cause, the continuance sought by petitioner has in effect been granted. We now discharge the rule.

On March 21, 1978, the petitioner was charged with counts of aggravated robbery, section 18-4-302, C.R.S. 1973 (now in 1978 Repl. Vol. 8), and crime of violence, section 16-11-309, C.R.S. 1973 (now in 1978 Repl. Vol. 8). The public defender was appointed to represent him on September 11, 1978, and trial was set for February 20, 1979. In February, the petitioner moved for a continuance and the trial was continued to March 12, 1979. The petitioner was told that no further continuances would be granted.

Prior to the scheduled trial date, a lawyer not connected with the public defender's office, contacted the respondent district court and indicated his intention to enter an appearance on behalf of the petitioner if the court

would grant a continuance. The respondent court advised the lawyer of its earlier order regarding additional continuances, and said that March 12, 1979 was a firm trial date. Thereafter, on March 8, 1979, the petitioner requested that the public defender arrange for a meeting with the prosecutor so that the petitioner could offer information and assistance to the police in exchange for favorable disposition of his case. When the petitioner outlined the information to the public defender, it was apparent that the evidence could be used in the prosecution of other defendants represented by the public defender. The public defender immediately terminated the interview and told the petitioner that he had a conflict of interest and could not assist the petitioner in his efforts to obtain concessions from the prosecutor in the form of a plea bargain. The public defender then informed the respondent court of the conflict of interest and filed a motion for withdrawal from petitioner's case. Because of a heavy docket, the respondent court was unable to hear the motion until the morning of trial. The public defender filed a petition in this Court for a writ of prohibition.

The allegations in the petition prompted us to issue a rule to show cause. Denials and assertions made by the respondent court in the answer, coupled with counter assertions by the petitioner in the reply, create factual issues. It would be folly under the circumstances for us to grant relief in an original proceeding.

The petitioner asserts that scheduling of the hearing on the public defender's motion to withdraw on the day of trial deprived him of the effective assistance of counsel. With a more complete record the matter of effective assistance of counsel might be completely determined on the basis of constitutional standards. Certain principles, however, are so fundamental that they should be set forth so that the trial court can properly determine the issues after we discharge our rule to show cause.

I.

It is a fundamental tenet of the Sixth Amendment of the United States Constitution that the right to the assistance of counsel be "untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *White v. United States*, 396 F.2d 822 (5th Cir. 1968); *People v. Romero*, 189 Colo. 526, 543 P.2d 56 (1975). In *Allen v. District Court*, 184 Colo. 202, 519 P.2d 351 (1974), we said:

"The need for defense counsel to be completely free from a conflict of interest is of great importance and has a direct bearing on the quality of our criminal justice system."

184 Colo. at 205, 519 P.2d at 352-53. In short, an attorney must not be placed in any circumstances where the loyalty owed to his client may be diminished, fettered, or threatened in any manner by his loyalty to another client. *Id.*

The Code of Professional Responsibility, C.R.C.P. Canon 2, DR 2-110, provides general guidelines on withdrawal from employment, and Canon 5, DR 5-105(B) provides strictures on counsel appearing for defendants who have conflicting interests:

"A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, or if it would be likely to involve him in representing different interests."

When the conflict involves clients who are not being tried jointly, DR 5-105(B) is amplified by EC 5-14, which provides:

"Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant."

*See also American Bar Association Standards for Criminal Justice Relating to the Defense Function*, § 4-3.5.

Further guidance is given by the *American Bar Association Standards for Criminal Justice.*[1] The *American Bar Association Standards for Criminal Justice Relating to the Defense Function* define the role of defense counsel in these terms:

"Standard 4-1.1. Role of defense counsel.

"(a) Counsel for the accused is an essential component of the administration of criminal justice. A court properly constituted to hear a criminal case must be viewed as a tripartite entity consisting of the judge (and jury, where appropriate), counsel for the prosecution, and counsel for the accused.

"(b) The basic duty the lawyer for the accused owes to the administration of justice is to serve as the accused's counselor and advocate with courage, devotion, and to the utmost of his or her learning and ability and according to law.

---

[1] The respondent court relies on section 5.3 of the *American Bar Association Standards Relating to Providing Defense Services*, which provides:

5.3 Withdrawal of counsel.

Once appointed, counsel should not request leave to withdraw unless compelled to do so because of serious illness or other incapacity to render competent representation in the case, or unless contemporaneously or announced future conduct of the accused is such as to seriously compromise the lawyer's professional integrity. If leave to withdraw is granted, or if the defendant for substantial grounds asks that counsel be replaced, successor counsel should be appointed. Counsel should not seek to withdraw because he believes that the contentions of his client lack merit, but should present for consideration such points as the client desires to be raised provided he can do without compromising professional standards.

The revised version of the *American Bar Association Standards* however, has eliminated this standard completely because it is fully addressed in the Code of Professional Responsibility.

"(c) The defense lawyer, in common with all members of the bar, is subject to standards of conduct stated in statutes, rules, decisions of courts, and codes, canons, or other standards of professional conduct. The defense lawyer has no duty to execute any directive of the accused which does not comport with law or such standards; the defense lawyer is the professional representative of the accused, not the accused's alter ego.

"(d) It is unprofessional conduct for a lawyer intentionally to misrepresent matters of fact or law to the court.

"(e) It is the duty of every lawyer to know the standards of professional conduct as defined in codes and canons of the legal profession and in this chapter. The functions and duties of defense counsel are governed by such standards whether defense counsel is assigned or privately retained."

The directions to the prosecutor, as set forth in the *American Bar Association Standards for Criminal Justice Relating to the Prosecution Function*, state:

"Standard 3-4.1. Availability for plea discussions.

"(a) The prosecutor should make known a general policy or willingness to consult with defense counsel concerning disposition of charges by plea.

"(b) It is unprofessional conduct for a prosecutor to engage in plea discussions directly with an accused who is represented by counsel, except with counsel's approval. Where the defendant has properly waived counsel, the prosecuting attorney may engage in plea discussions with the defendant, although ordinarily a verbatim record of such discussions should be made and preserved.

"(c) It is unprofessional conduct for a prosecutor knowingly to make false statements or representations in the course of plea discussions with defense counsel or the accused."

## II.

In this case, the issue before us is whether the failure of the respondent court to grant the petitioner a hearing until morning of trial denied the petitioner the effective assistance of counsel. In *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1977), the Supreme Court held that when defense counsel raises a question of conflict of interest, it is the duty of the trial court to either "appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." Since the respondent court did not initially appoint separate counsel at the petitioner's request, the question is whether the respondent court took the proper steps to ascertain whether the risk of conflict was too remote to warrant the appointment of separate counsel.

Given the limited record before us, we cannot say that the respondent court did not take the proper steps to address the asserted conflict of interest. However, the respondent court was in error in suggesting that the petitioner could meet with the prosecutor without counsel to carry

on his plea negotiations. Such a solution would, in effect, be a deprivation of counsel. The danger, however, is not only that a defendant may be denied the effective assistance of counsel in an essential point of the proceedings, but also that an unscrupulous defendant will utilize an attempt at plea bargaining as a means of postponing his trial date and for changing counsel at his every whim.

Our quotations from the *American Bar Association Standards of Criminal Justice* establish that a heavy duty is placed on defense counsel to insure that a frivolous motion is not made. A public defender or a busy defense lawyer may find that his representation of one client is inimical to his representation of another client. At that point, he must make an election as to the client he will represent and he has a heavy duty to the court to see that he honors dates that he has agreed to for the trial of a case.

The rule to show cause which we issued, may have been improvident in light of the record which is now before us, and we therefore order that the rule be discharged. The trial court, in considering the petitioner's request for the withdrawal of counsel, will be in position to properly weigh the issues involved in light of the evidence presented, and the directions which we have provided in this opinion. In camera consideration may be necessary as to some issues, but it would be a display of appellate arrogance for us to interfere with the discretion of the trial judge under the facts presented here.

Accordingly, the rule to show cause is discharged.

JUSTICE GROVES concurring in the result.